**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**RICHARD REED,**

|  |  |
|---|---|
| **Plaintiff,** | **6:14-cv-45** |
|  | **(GLS)** |
| **v.** | |

**CAROLYN W. COLVIN,** as
Commissioner of the Social
Security Administration,

**Defendant.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Peter W. Antonowicz | PETER W. ANTONOWICZ, ESQ. |
| 148 West Dominick Street | |
| Rome, NY 13440 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SANDRA M. GROSSFELD |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Richard Reed challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Reed's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On February 28, 2011, Reed filed an application for DIB under the Social Security Act ("the Act"), alleging disability since November 11, 2010. (Tr.[1] at 66, 139-45.) After his application was denied, (*id.* at 67-70), Reed requested a hearing before an Administrative Law Judge (ALJ), which was held on August 7, 2012, (*id.* at 33-59, 73). On October 4, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 12-31.)

Reed commenced the present action by filing his complaint on January 13, 2014 wherein he sought review of the Commissioner's

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

determination.  (Compl.)  The Commissioner filed an answer and a certified

copy of the administrative transcript.  (Dkt. Nos. 8, 9.)  Each party, seeking

judgment on the pleadings, filed a brief.  (Dkt. Nos. 15, 18.)

### III. <u>Contentions</u>

Reed contends that the Commissioner's decision is tainted by legal

error and is not supported by substantial evidence.  (Dkt. No. 15 at 11-23.)

Specifically, Reed claims that the ALJ: (1) erred in determining his residual

functional capacity (RFC); and, (2) improperly evaluated his allegations of

disabling pain and symptoms.  (*Id.*)  The Commissioner counters that the

appropriate legal standards were used by the ALJ and her decision is also

supported by substantial evidence.  (Dkt. No. 18 at 6-12.)

### IV. <u>Facts</u>

The court incorporates the factual recitations of the parties and the

ALJ.  (*See generally* Dkt. No. 15 at 2-8; Dkt. No. 18 at 1; Tr. at 17-27.)

### V. <u>Standard of Review</u>

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g) is well established and will not be repeated here.  For a

full discussion of the standard and the five-step process by which the

Commissioner evaluates whether a claimant is disabled under the Act, the

court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at \*1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  **Discussion**

## A.    **RFC Determination**

Reed's two points ultimately relate to the ALJ's determination of Reed's RFC.  This term refers to "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including medical source opinions and a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence[2] in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

### *1.    Treating Physician Rule*

First, Reed argues that the ALJ failed to apply the correct legal

---

[2] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

4

standard in granting less than controlling weight to the opinion of treating

physician Kin Tsoi, and her decision to do so is unsupported by substantial

evidence.  (Dkt. No. 15 at 11-15.)  Controlling weight will be given to a

treating source's opinion on the nature and severity of a claimant's

impairments where it is "well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence."  20 C.F.R. § 404.1527(c)(2); *see Halloran v.*

*Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  When a treating source's opinion

is given less than controlling weight, the ALJ is required to consider the

following factors: the length, nature and extent of the treatment

relationship; the frequency of examination; evidentiary support offered;

consistency with the record as a whole; and specialization of the examiner.

*See* 20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ must provide "good reasons

for the weight given to the treating source's opinion."  *Petrie v. Astrue*, 412

F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations

omitted).  "Nevertheless, where the evidence of record permits [the court]

to glean the rationale of an ALJ's decision," it is not necessary that the ALJ

"have mentioned every item of testimony presented to h[er] or have

explained why [s]he considered particular evidence unpersuasive or

insufficient to lead h[er] to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

In this case, the ALJ accorded "some weight" to the opinion of Dr. Tsoi, who treated Reed for low and mid back pain, (Tr. at 271-74, 339-42, 346-62, 369-71), that Reed was capable of lifting and carrying twenty pounds frequently, and, in an eight-hour day, standing or walking for one hour and sitting for two hours. (*Id.* at 25-26, 414-15.) Dr. Tsoi further opined that Reed needs to lay down intermittently throughout the day at an unpredictable frequency, and would be off task, due to pain, for at least fifty percent of the day. (*Id.*) The ALJ explained that she credited Dr. Tsoi's opinion with respect to the amount of weight that Reed was capable of lifting and carrying because it was consistent with the remainder of the evidence of record, including the opinion of consulting examiner Kalyani Ganesh and Reed's responses on a Social Security Administration Function Report,[3] (*id.* at 187, 386), but otherwise discounted Dr. Tsoi's opinion. (*Id.* at 25-26.) Less than controlling weight was given to this opinion based on Reed's reports of decreased pain with treatment, the lack of complaints or observations of reduced concentration in Dr. Tsoi's notes,

---

[3] Reed indicated that he is capable of lifting fifteen to twenty pounds. (Tr. at 187.)

and the inconsistency in Dr. Tsoi's opinion that Reed would be off-task fifty

percent of the time due to pain, but would not be absent from work due to

pain.  (*Id.* at 26.)  Such assessment of the "supportability" and

"consistency" of a medical source's opinion is an explicitly permissible

consideration in the weighing process.  *See* 20 C.F.R. §404.1527(c)(3), (4).

In addition to being legally sound, the ALJ's treating source analysis

is supported by substantial evidence.  In particular, Reed began treatment

with Dr. Tsoi in November 2010 complaining of pain that radiated to his left

leg, with associated numbness and tingling.  (Tr. at 271-74.)  Thereafter, in

January 2011, Reed reported that his caudal epidural injection and bilateral

lumbar transformainal epidural injections in December 2010 had helped

relieve his symptoms.  (*Id.* at 366.)  Reed no longer suffered radicular

symptoms or numbness and tingling, but he continued to suffer axial back

pain, which he rated at a level five severity.  (*Id.* at 366-68.)  In March

2011, Reed reported that he had "excellent results" from bilateral medical

branch blocks in February 2011.  (*Id.* at 357.)  "His low back pain reduced

[sixty] percent after each procedure."  (*Id.*)  In April 2011, Reed informed

Dr. Tsoi that his axial low back pain improved significantly following L2, L3,

L4, and L5 facet medial branch radio frequency nerve ablation.  (*Id.* at 354.)  Pain in his thoracic spine, however, began to increase, and he rated his pain at a level six.  (*Id.* at 354-55.)  In September 2011, Reed indicated that his pain had definitely improved following bilateral lumbar radiofrequency ablation in the spring, and was averaging at a five to six level of severity.  (*Id.* at 434.)  However, in November 2011, after going without pain medication because he lost his prescriptions, his pain increased to a nine.  (*Id.* at 430.)

In April 2012, Reed complained of pain at a severity level of eight, but noted that he planned on going back to school.  (*Id.* at 449.)  Subsequently, in May 2012, Reed reported to his primary care physician, Gibran Tallim, that he was doing well and his pain was tolerable.  (*Id.* at 422-25.)  Further, Reed indicated to Dr. Tallim that he was planning on traveling to Texas to obtain training to become a truck driver.  (*Id.* at 422.)  Dr. Tallim's examination results contained in his treatment records are largely benign, other than Reed's subjective complaints of pain.  (*Id.* at 420-28.)  Dr. Tallim consistently noted that Reed was is no acute distress, alert and oriented, with his memory intact, normal motor strength in his extremities, intact sensation, normal and symmetric deep tendon reflexes, and intact cranial

8

nerves.  (*Id.*)  Dr. Tallim did note, on a couple of occasions, that Reed had a reduced range of motion of his lumbar spine.  (*Id.* at 421, 428.)

In addition to the above treatment notes indicating that his pain was controlled by medication, throughout the record, every time Reed's attention and concentration was assessed on examination, it was found to be normal.  (*Id.* at 381, 407-13, 449.)  Further, the opinion of Dr. Ganesh was inconsistent with Dr. Tsoi's restrictive opinion.  (*Id.* at 383-86.)  Dr. Ganesh's examination revealed Reed to be in no acute distress, with a normal gait, full squat, and the ability to walk on heels and toes without difficulty.  (*Id.* at 384.)  Although he had a reduced range of motion in his lumbar spine and reduced strength in his right upper extremity, Reed otherwise had full range of motion and strength in his extremities, no muscle atrophy, and negative straight leg raising.  (*Id.* at 385.)  Dr. Ganesh opined that Reed suffered no limitation in his ability to sit, stand, or walk, and a moderate limitation in his ability to lift, carry, push, pull, and reach overhead.  (*Id.* at 386.)

Based on the foregoing, the ALJ applied the proper legal standard in according "some weight" to the opinion of Dr. Tsoi, and her decision to do so is supported by substantial evidence.  (*Id.* at 25.)

9

*2.    Credibility Determination*

Next, Reed contends that the ALJ's assessment of his credibility was

legally flawed and is factually unsupported.  (Dkt. No. 15 at 15-23.)  Reed

argues that, in making her credibility determination, the ALJ failed to follow

appropriate Social Security rulings and ignored evidence of his, at times,

increasing pain, and the restrictions in his activities of daily living.  (*Id.* at

15-23.)  The Commissioner counters, and the court agrees, that the ALJ's

credibility finding was legally sound and is supported by substantial

evidence.  (Dkt. No. 18 at 10-12.)

Once the ALJ determines that the claimant suffers from a "medically

determinable impairment[] that could reasonably be expected to produce

the [symptoms] alleged," she "must evaluate the intensity and persistence

of those symptoms considering all of the available evidence; and, to the

extent that the claimant's [subjective] contentions are not substantiated by

the objective medical evidence, the ALJ must engage in a credibility

inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

quotation marks and citations omitted).  In performing this analysis, the ALJ

"must consider the entire case record and give specific reasons for the

weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg.

34,483, 34,485 (July 2, 1996).  Specifically, in addition to the objective

medical evidence, the ALJ must consider the following factors: "1) daily

activities; 2) location, duration, frequency and intensity of any symptoms; 3)

precipitating and aggravating factors; 4) type, dosage, effectiveness, and

side effects of any medications taken; 5) other treatment received; and 6)

other measures taken to relieve symptoms."  *F.S. v. Astrue*, No. 1:10-CV-

444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R.

§ 404.1529(c)(3)(i)-(vi)).

The ALJ found that Reed's subjective complaints were not credible.

(Tr. at 24.)  First, the ALJ considered evidence of Reed's drug seeking

behavior and reasonably concluded that Reed's desire to obtain narcotics

detracted from the credibility of his pain complaints.  (*Id.* at 25); *see*

*Pidkaminy v. Astrue*, 919 F. Supp. 2d 237, 250 (N.D.N.Y. 2013) ("'[A]

claimant's misuse of medications is a valid factor in an ALJ's credibility

determinations.'" (quoting *Metz v. Astrue*, No. 1:06-CV-1509, 2010 WL

2243343, at *14 (N.D.N.Y. Apr. 21, 2010))).  In particular, Reed's lab tests

in February and March 2011 were positive for hydrocodone and

cyclobenzaprine, which had not been prescribed, but negative for

oxycodone which had.  (Tr. at 328-33.)  Further, in November 2011, Reed

11

reported that he lost his prescription medications and was told by his treating physician that they would not be replaced, as it was his responsibility to keep his medications in a safe and secure location. (*Id.* at 430.) Thereafter, Reed's request for a "postdate prescription" for his pain medications because he was going out of town was denied. (*Id.* at 422.)

Second, the ALJ concluded that Reed's expressed desire to become a truck driver indicated that he believed he was capable of working and was inconsistent with his testimony that he cannot sit for more than fifteen to twenty minutes. (*Id.* at 25, 54, 420, 422); *see* 20 C.F.R. § 404.1529(c)(4); SSR 96-7p, 61 Fed. Reg. at 34,486 ("The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances."). Reed also expressed a plan to go back to school. (Tr. at 449.)

Third, the ALJ considered Reed's wide range of daily activities. (*Id.* at 25); *see* 20 C.F.R. § 404.1529(c)(3)(i). While Reed cites to his testimony that he cannot do much around the house including laundry, playing with his kids, or dressing and showering independently, the ALJ relied on Reed's reports to Dr. Ganesh and consultative examiner Dennis

12

Noia, who conducted a mental status examination, as well as Reed's responses on his Function Report. (Tr. at 25, 50, 53; Dkt. No. 15 at 18-20.) Reed reported to Dr. Noia that he can dress, bathe, and groom himself, cook and prepare food, do general cleaning and laundry, manage money, drive a vehicle, and take public transportation. (Tr. at 381.) Further, Reed told Dr. Ganesh that he cooks a couple of times a week, does cleaning as needed, takes care of his school-aged children, showers and dresses daily, watches television, and listens to the radio. (*Id.* at 384.) On his Function Report, Reed noted that he cares for his children and dog, has no problems with personal care, performs light house work, drives a car, shops a couple of times a month, and watches television, reads the newspaper, and uses the computer daily. (*Id.* at 183-87, 192.)

In sum, the ALJ's thorough credibility analysis was legally proper and is supported by substantial evidence. Accordingly, for all of the reasons stated above, substantial evidence supports the ALJ's conclusion that Reed can perform the demands of light work. (*Id.* at 22-26.) Her RFC determination will, therefore, not be disturbed.

## B. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of

the ALJ's decision as it is supported by substantial evidence.

## VII.  <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

Reed's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 24, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court